IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| STREAM GAS & ELECTRIC, LTD,<br><br>       Plaintiff,<br><br>vs.<br><br>FARNAM STREET FINANCIAL, INC.,<br><br>       Defendant. | **COMPLAINT**<br><br>Court File No.:_____ |

Plaintiff, Stream Gas & Electric, Ltd., for its Complaint against Defendant Farnam Street Financial, Inc., states:

## THE PARTIES, JURISDICTION AND VENUE

1. Plaintiff Stream Gas & Electric, Ltd. is a Texas limited partnership with its principal place of business located at 1950 Stemmons Freeway, Suite 3000, Dallas, Texas 75207. Plaintiff is a Texas resident for purposes of diversity jurisdiction under 28 U.S.C. §1332.

2. Defendant, Farnam Street Financial, Inc., is a Florida corporation registered to do business in the State of Minnesota, with its principal place of business located in Minnetonka, Hennepin County, Minnesota at 240 Pondview Plaza, 5850 Opus Parkway, Minnetonka, Minnesota 55343. Defendant can be served with process at its registered office at 240 Pondview Plaza, 5850 Opus Parkway, Minnetonka, or through its President, Steven C. Morgan at the same address, or wherever else he might be found. Defendant is

a resident of the State of Minnesota for purposes of diversity jurisdiction under 28 U.S.C. §1332.

3.   The parties are diverse, and the amount in controversy requirement of $75,000.00 is present. Accordingly, pursuant to 28 U.S.C. § 1332(a)(1), jurisdiction is proper in this Court.

4.   Venue of this action is proper under 28 U.S.C. § 1391(b)(1) (as a judicial district where any defendant resides), 28 U.S.C. § 1391(b)(2) (a judicial district in which a substantial part of the events giving rise to the claim occurred), and pursuant to a contract between the parties whereby they agree that venue is appropriate.

5.   All conditions precedent to instituting this action have been performed or have occurred.

## FACTUAL BACKGROUND

6.   Plaintiff, as lessee, and Defendant, as lessor, are parties to a UCC Article II(A) Equipment Finance Lease. A Finance Lease is a lease in which the equipment to be leased is manufactured by a third party, selected by the lessee, purchased and owned by the lessor, and leased to the lessee. Minn. Stat. § 336.2A-108(g). The process of an Equipment Finance Lease takes place in several phases.

7.   First, the parties execute a Master Lease Agreement, which sets forth general terms applicable to all of the leased equipment. In the present case, Plaintiff and Defendant are parties to a Master Lease Agreement No. ST111506 dated and effective as of November 17, 2006.

8. Once the Master Lease Agreement is in effect, the parties negotiate Lease Schedules, which contain terms specific to groups of equipment under the Lease. A Lease Schedule generally contains an estimate of the value of goods to be purchased, the term of the Lease, anticipated monthly lease charges, security deposits, and other terms. The parties may enter into multiple Lease Schedules pursuant to a single Master Lease.

9. Additional or unique terms to the parties' relationship are typically set forth in separate Riders to the Master Lease Agreement.

10. After the equipment specified in a Lease Schedule has been purchased, delivered and accepted, the parties execute a revised Lease Schedule. Because the original Lease Schedule was based on an estimated equipment value, the terms of the revised Lease Schedule reflect any adjustments to the security deposit and monthly lease charges. The revised Lease Schedule will also identify the date that the Lease term commences, as well as the duration of the initial Lease term.

11. The chronology for the relevant Master Lease, Lease Schedules, revised Lease Schedules, and Riders, is as follows:

    A. On November 15, 2006, the parties executed Master Lease Agreement No. ST111506 regarding Plaintiff's lease of various office equipment, computer equipment and computer software from Defendant. The Lease Agreement defines all equipment, software, and services subject to the Lease as "equipment."

    B. On November 15, 2006, the parties executed Lease Schedule No. 1, which described the initial equipment covered by the Lease and a

3

"Purchase Option Rider" which gave Plaintiff the right to purchase the equipment, for its to be mutually agreed upon fair market value, at the end of the Lease.

C. On August 24, 2007, the parties executed a revised Schedule 1 which set a value for the leased equipment at $2.5 million.

D. On September 1, 2010, the parties executed a Sales Agreement, whereby Plaintiff purchased the Schedule 1 equipment from Defendant for $560,000.00. This sale resolved all issues relating to Schedule No. 1, and there are no claims relating to Schedule No. 1 in this lawsuit.

E. On August 20, 2007, the parties executed Lease Schedule No. 2 relating to additional equipment to be leased by Plaintiff pursuant to the Master Lease.

F. On June 5, 2008, the parties executed a revised Schedule 2 which identified the value of the equipment being leased at $523,000.00.

G. On March 3, 2011, the parties executed a Sales Agreement for the equipment described in Schedule 2. That resolved all issues relating to Schedule 2, and there are no claims relating to Schedule 2 in this lawsuit.

H. On June 5, 2008, the parties executed Lease Schedule No. 3 regarding Plaintiff's lease of additional equipment from Defendant.

I.  On January 13, 2010, the parties executed a Purchase Option Rider to Lease Schedule No. 3 which grants Plaintiff the right to purchase the Schedule 3 equipment under certain conditions at the equipment's then determined mutually-agreed fair market value at the conclusion of the Lease.

J.  On February 9, 2011, the parties executed a revised Schedule 3 setting:

1.  The commencement date - February 1, 2011

2.  The term of the Lease – 24 months

3.  The monthly Lease charge - $111,990.47

4.  A security deposit of $84,812.00.

This lawsuit pertains to revised Schedule 3 (3R), Rider No. 4 (referred to hereinafter as the Purchase Option Rider), the security deposit and Plaintiff's right to purchase the equipment for its "mutually-agreed upon fair market value."

12.  Plaintiff, as lessee, materially performed all of applicable obligations pursuant to the Master Lease and Schedule 3R, and properly exercised the option to purchase the leased equipment.

13.  Instead of negotiating the <u>mutually</u>-agreed fair market value of the equipment, however, Defendant <u>unilaterally</u> demanded Plaintiff pay the "casualty loss value" of the equipment. "Casualty loss value" is a replacement cost value which has nothing to do with fair market value and, accordingly, is an irrelevant value. Moreover, the Defendant also arbitrarily assigned a casualty loss value to the equipment which is

inflated and false. Despite Plaintiff's subsequent attempts to negotiate a "mutually-agreed fair market value" with Defendant, defendant has made its unilateral and inflated offer a "take it or leave it" proposition.

14. Alternatively, Plaintiff demanded that the equipment be appraised to determine its true fair market value. However, again, Defendant unilaterally insisted that the parties use an appraiser solely chosen by Defendant, and further insisted that Plaintiff pay for the appraisal. The Agreement imposes no such obligations on Plaintiff. The Defendant's proposed appraiser also has an established business relationship with Defendant, announces on its website that it represents the lessor side of the leasing industry, and has already indicated that its fee for conducting the appraisal would exceed $20,000, which is an exorbitant cost for what would be a relatively simple appraisal.

15. In response, the Plaintiff has proposed that the parties hire a true neutral appraiser, and that they split the cost of the appraisal. Plaintiff proposed one appraiser who estimated that the cost for the appraisal would be in the $5,000 to $10,000 range. However, the Defendant flatly rejected this proposal.

16. Finally, Defendant recently informed Plaintiff that Defendant has unilaterally decreed Plaintiff to have forfeited its $84,812.00 security deposit for alleged "previous" but unspecified defaults of the Lease.

## COUNT I

### Breach of Contract

15. The parties to this action contractually agreed to mutually agree on the fair market value of the equipment at issue.

16. Defendant's refusal to agree to any reasonable process for mutually agreeing on the fair market value of the equipment, and its insistence, instead, that Plaintiff agree to Defendant's unilateral method for determining fair market value is a breach of the parties' contract.

17. Defendant's breach of the parties' contract is a direct cause of damages to Plaintiff.

## COUNT II

### Declaration of Rights (Right to Purchase Equipment)

18. There is an actual controversy between Plaintiff and Defendant concerning Plaintiff's right to purchase the equipment at issue pursuant to the Purchase Option Rider to the parties' Lease. This controversy is substantial and between parties having adverse legal interests of sufficiency, immediacy, and reality to warrant the issuance of a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

19. The Purchase Option Rider provides the lessee with the option to purchase the equipment at issue in this action.

20. Plaintiff timely exercised its option to purchase the equipment from Defendant.

21. Plaintiff has opted to purchase the equipment at issue from Defendant according to the contractual pricing mechanism (i.e., "as-is, where-is, retail, in- place basis), for the to be determined mutually-agreed fair market value (plus applicable taxes) as provided for in the Purchase Option Rider.

22. Defendant has refused Plaintiff's attempts to agree upon a procedure whereby the parties may mutually agree on the true fair market value of the equipment. Instead, Defendant insists on its own unilateral method for determining that value, and insists that Plaintiff pay an exorbitant price to hire Defendant's self-selected appraiser.

23. Pursuant to 28 U.S.C. §§ 2201 and 2202, and Fed. R. Civ. P. 57, this Court has the power to decide the rights of the parties hereto.

24. Plaintiff is entitled to declarations that: (1) Defendant is required to sell the equipment to Plaintiff for its current fair market value; and (2) Plaintiff is entitled to purchase the equipment from Defendant according to the pricing mechanism set forth in the Purchase Option Rider for the then-determined mutually-agreed fair market value (i.e., "as-is, where-is, retail, in-place basis" plus applicable taxes); and (3) Defendant is required to return Plaintiff's security deposit of $84,812.00.

## COUNT III

### Breach of Contract – Security Deposit

25. Lease Schedule 3R provides that the $84,812.00 security deposit will be returned to the lessee at the end of the Lease term, provided "there is no event of default."

26. Plaintiff has materially performed all of its obligations under the Lease and is not in default. Therefore, Defendant's act of retaining the security deposit is a breach of the parties' contract which has damaged Plaintiff.

WHEREFORE, Plaintiff prays for relief from the Court as follows:

1. For damages not less than $75,000 associated with Defendant's breach of contract pursuant to Count I.

2. For damages not less than $75,000.00 associated with Defendant's breach of contract pursuant to Count III.

3. For an Order declaring that: (1) Defendant is required to sell the leased equipment to Plaintiff for its fair market value; and (2) Plaintiff is entitled to purchase the equipment from Defendant according to the pricing mechanism set forth in the Purchase Option Rider for the then-determined mutually-agreed fair market value (i.e., "as-is, where-is, retail, in-place basis" plus applicable taxes); and (3) Defendant return to Plaintiff the security deposit of $84,812.00.

4. For whatever other relief the Court deems proper.

**BASSFORD REMELE**
*A Professional Association*

Dated: 1/30/13

By s/ Stanford P. Hill
Michael A. Klutho (License #186302)
Stanford P. Hill (License #0174208)
Michelle K. Dove (License #033232X)
Rachel B. Peterson (License #0388140)
33 South Sixth Street, Suite 3800
Minneapolis, Minnesota 55402-3707
Telephone: (612) 333-3000
Facsimile (612) 746-1202
shill@bassford.com

*Attorneys for Plaintiff*

1210348.docx